FILED
08/20/2024
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs January 30, 2024

## IN RE CONSERVATORSHIP OF SUSAN DAVIS MALONE

**Appeal from the Probate Court for Shelby County**
**No. PR-24906          Joe Townsend, Judge**

_____

### No. W2024-00134-COA-T10B-CV

_____

This second recusal appeal in the underlying conservatorship case is currently before this Court on remand from the Tennessee Supreme Court. This Court had issued an opinion vacating, for lack of subject matter jurisdiction, three orders entered by the trial court, including the trial court's order denying the second motion to recuse that is the subject of this appeal. The Supreme Court reversed that decision, holding that (1) the stay imposed by this Court during pendency of the first recusal appeal did not divest the trial court of subject matter jurisdiction over the case and (2) the proponents of the stay had waived any argument that orders entered by the trial court should be vacated because they were entered prior to issuance of the mandate. Accordingly, the second recusal motion is again before this Court. Upon thorough review, we affirm the trial court's denial of the second motion to recuse.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right;**
**Judgment of the Probate Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. CARMA DENNIS MCGEE, J., filed a separate dissenting opinion.

Edward Thomas Autry, Memphis, Tennessee, for the appellants, Hannah Elizabeth Bleavins and Edward Thomas Autry.

David Wade, Christopher M. Myatt, and Bryant T. Carlton, Memphis, Tennessee, for the appellees, Lisa Malone Jackson and Paul Neil Royal.

**OPINION**

## I.  Factual and Procedural Background

This is the second accelerated interlocutory appeal filed pursuant to Tennessee Supreme Court Rule 10B in the underlying conservatorship action.  The first was one of two related Rule 10B appeals filed on June 7, 2023, by attorneys Edward Thomas Autry and Hannah Elizabeth Bleavins ("Attorneys") seeking relief from an order denying their motion to recuse the trial judge, Judge Joe Townsend ("trial judge"), in the  Shelby County Probate Court ("trial court").  *See In re Conservatorship of Susan Davis Malone*, W2023-00841-COA-T10B-CV, 2023 WL 8454618 (Tenn. Ct. App. Dec. 6, 2023) ("*Malone I*").[1] On December 6, 2023, this Court affirmed the trial court's denial of the motion to recuse in *Malone I* and in the related divorce case.  The factual and procedural history that led to the filing of the initial Rule 10B appeal in the underlying conservatorship case is detailed in this Court's opinion entered in *Malone I*.

Attorneys also filed two applications seeking extraordinary appeal, pursuant to Tennessee Rule of Appellate Procedure 10, in both the underlying conservatorship case and the related divorce case:  *In re Conservatorship of Susan Davis Malone*, W2023-00689-COA-R10-CV, and *Susan Davis Malone v. Thomas Franklin Malone*, W2023-00690-COA-R10-CV (collectively, "the Rule 10 Extraordinary Appeals.").  This Court denied both applications for extraordinary appeal by orders entered on January 10, 2024, and December 19, 2023, respectively.

In the instant case, Attorneys appeal the trial court's January 9, 2024 order denying their second motion for recusal of the trial judge in the underlying conservatorship case.  The second recusal motion focused on events that occurred after Attorneys filed their first recusal appeal in *Malone I*, and the issues raised by Attorneys in this appeal arise from alleged actions and rulings of the trial judge during that time.

After Attorneys initiated the *Malone I* Rule 10B appeal, they filed a motion with this Court to stay proceedings in the trial court pending the outcome of that appeal, which this Court granted on June 14, 2023.  The stay order expressly provided:

> [A]ll trial court proceedings shall be stayed pending further Order of this Court.  This stay includes but is not limited to:  (1) the taking of the depositions of Attorneys Autry and Bleavins; (2) the production of documents for such depositions; (3) the appointment of an interim conservator over the person and Estate of Ms. Malone; and (4) the turning

---

[1] The other Rule 10B appeal was filed simultaneously in the related divorce case.  *See Malone v. Malone*, W2023-00843-COA-T10B-CV, 2023 WL 8457951 (Tenn. Ct. App. Dec. 6, 2023).

over of Ms. Malone's funds by Attorneys Autry and Bleavins to an interim conservator. The trial court is prohibited from entering any dispositive orders.

On June 23, 2023, this Court entered orders staying the proceedings in the Rule 10 Extraordinary Appeals pending the outcome of *Malone I* and the Rule 10B appeal in the related divorce action.

On July 25, 2023, Attorneys filed a motion to clarify this Court's June 14, 2023 stay order in *Malone I*, alleging that the trial judge was employing the stay order as a basis to refuse to resolve any matter involving Attorneys or their law firm, Williams McDaniel, PLLC ("Williams McDaniel"). Attorneys further claimed that the trial judge had not only refused to consider such matters himself but had also "prohibited" another judge, Judge Kathleen N. Gomes of Shelby County Probate Court, Division I, from hearing any matters involving Attorneys or their law firm. On August 8, 2023, the *Malone I* Court granted Attorneys' motion to clarify, stating "that the trial judge is permitted to hear and enter dispositive orders in other matters pending before him that involve [Attorneys] and attorneys practicing with [Williams McDaniel]." In the order granting the motion to clarify, the *Malone I* Court reiterated that the stay entered on June 14, 2023, "prohibit[ed] the trial judge from entering dispositive orders" in the underlying action.

On October 10, 2023, this Court entered identical remand orders in the Rule 10 Extraordinary Appeals ("the Rule 10 Remand Orders"), lifting the stays entered in those appeals and remanding the cases to the trial court "for the limited purpose of adjudicating [Attorneys'] May 2, 2023 motion to alter or amend."[2] On October 31, 2023, in response to the Rule 10 Remand Orders, the trial court entered an order "Partially Granting Five (5) Motions to Alter and Amend, Setting Aside the Findings of Facts and the Rulings in the Orders, and Setting Matters for Evidentiary Hearing." Therein, the trial court adjudicated the May 2, 2023 motion to alter or amend and also ruled on four additional pending motions to alter or amend.[3]

Additionally, the trial court set in motion several other actions through the October 31, 2023 order. Namely, the trial court determined that it would conduct evidentiary hearings "to consider the substantive matters set forth in the [motion to alter or amend.]" Accordingly, the trial court set a status conference to be held on November 6, 2023, for the express purpose "of scheduling the evidentiary hearings to carry out the terms of [the

---

[2] The motion to alter or amend was actually filed on May 8, 2023, which the trial court correctly stated in its October 31, 2023 order addressing the motion.

[3] The trial court had determined that it was proper to grant the additional motions to alter or amend, stating: "The Motions to Alter or Amend filed on May 8, 2023 are inextricably linked to the issues raised in the Motions to Alter or Amend filed on January 20, 2023 in the Emergency Conservatorship, Docket No. PR-24346; filed on June 5, 2023 in the Conservatorship; and filed on June 5, 2023 in the post-divorce matter."

October 31, 2023 order]."  On November 6, 2023, the trial court conducted the "status conference," but rather than scheduling an evidentiary hearing for a specified later date as indicated in the October 31, 2023 order, the trial court proceeded to conduct the evidentiary hearing immediately following the status conference.

The trial court subsequently entered two separate orders on November 7 and 15, 2023.  In the November 7, 2023 order, which was captioned "Order Appointing Conservator," the trial court appointed Lisa Malone Jackson to serve as conservator of the person of Ms. Malone, appointed Ms. Jackson and Paul Neil Royal to serve as co-conservators of the estate of Ms. Malone, and memorialized certain of the trial court's findings that it had made during the November 6, 2023 evidentiary hearing.  In the November 15, 2023 order, which was captioned "Order on Evidentiary Hearing on Five (5) Motions to Alter or Amend" and which the trial court deemed to be "the separate comprehensive order on the November 6, 2023 evidentiary hearing," the trial court included, *inter alia*, (1) a procedural history leading to the November 6, 2023 evidentiary hearing; (2) the court's reasons for proceeding with the evidentiary hearing on November 6, 2023, and for disqualifying Attorneys from serving as counsel during the hearing; and (3) the court's findings of fact based on evidence presented during the hearing.

These orders entered by the trial court prompted Attorneys to file a "Motion to Void Trial Court Orders Entered After October 31, 2023 and For Writ of Mandamus" in the *Malone I* appeal and the related divorce recusal appeal.[4]  On November 27, 2023, in the Rule 10 Extraordinary Appeals, this Court entered two essentially identical orders concluding that the trial court had "properly exercised its limited adjudication when it ruled on all five (5) pending motions to alter or amend in its October 31, 2023 order" but that "holding the [November 6, 2023] evidentiary hearing was outside of the scope of the trial court's authority set forth in the [Rule 10] Remand Order."  This Court, through the November 27, 2023 orders entered in the Rule 10 Extraordinary Appeals, vacated the portions of the trial court's October 31, 2023 order regarding the November 6, 2023 evidentiary hearing.[5]

On December 6, 2023, this Court issued its majority Opinions and judgments

_____

[4] Attorneys also filed a "Motion to Reinstitute Stay of T.R.A.P. 10 Extraordinary Appeal Proceedings Pending Resolution of Recusal Appeal and to Enforce Stay of All Trial Court Proceedings" in the Rule 10 Extraordinary Appeal associated with the underlying conservatorship action.

[5] In *Malone I*, this Court entered an order on November 30, 2023, in response to Attorneys' "Motion to Void Trial Court Orders Entered After October 31, 2023 and for Writ of Mandamus."  The order mirrored the conclusions that had already been adjudicated by this Court in the November 27, 2023 orders entered in the Rule 10 Extraordinary Appeals; namely, that the trial court's November 6, 2023 "status conference" and subsequent evidentiary hearing were proceedings outside the scope of the trial court's authority as set forth in the limited Remand Orders entered in the Extraordinary Appeals.  The *Malone I* Court reiterated the panel's conclusion in the Rule 10 Extraordinary Appeals when it declared that the trial court's orders flowing from the November 6, 2023 proceedings were rendered "void and of no consequence to this Court."

affirming the trial court's denial of the recusal motion in both the *Malone I* conservatorship case and the related divorce case, with Judge Kenny Armstrong dissenting in both. In the *Malone I* Opinion, we lifted the stay that had been imposed on June 14, 2023, and remanded the matter to the trial court for further proceedings and a final determination therein. On December 7, 2023, Ms. Jackson and the other respondents in the conservatorship case ("the Conservatorship Respondents") filed an emergency motion before the trial court to clarify the status of Ms. Malone in light of the fact that Attorneys and Conservatorship Respondents remained in dispute about who was the rightful conservator over the person and finances of Ms. Malone. The Conservatorship Respondents sought the trial court's intervention regarding the "urgent question of who is charged with caring for Susan Davis Malone." The Conservatorship Respondents then filed a motion for a temporary restraining order prohibiting Attorneys from representing or acting on behalf of Ms. Malone in medical, financial, or other matters. The Conservatorship Respondents also filed an "Emergency Motion to Clarify Status" of Ms. Malone in this Court, which this Court denied as moot on December 8, 2023.

On December 11, 2023, the trial court entered two orders in the conservatorship case. The first was an order setting an evidentiary hearing to commence at 9:30 a.m. on December 13, 2023, concerning "the issues set forth in the pleadings" in the conservatorship case. The second was an order *sua sponte* discharging the guardian *ad litem* and attorney *ad litem* for Ms. Malone. On December 12, 2023, at 11:50 p.m., Attorneys filed a second motion for recusal of the trial judge pursuant to Tennessee Supreme Court Rule 10B. In the motion, Attorneys alleged that the trial judge had shown bias against Attorneys and their law firm when he (1) refused to hear any matter in any case involving Attorneys or their law firm during the pendency of the first Rule 10B appeals; (2) conducted an evidentiary hearing on November 6, 2023, outside the scope of this Court's limited remand and issued several orders stemming from the improper hearing, including an order removing Attorneys as conservators for Ms. Malone; and (3) conducted an *ex parte* hearing in an unrelated matter without proper notice to Attorneys, which hearing resulted in removal of Attorney Bleavins as personal representative for the estate of another client.

On December 13, 2023, the trial court convened the evidentiary hearing that had been previously set and informed those present that Attorneys had filed the second Rule 10B recusal motion late the night before. Attorneys did not appear for the December 13, 2023 hearing, and the trial judge requested that counsel for the Conservatorship Respondents call Attorneys by telephone and instruct them to appear in court for a hearing on their second recusal motion. After informing the court that Mr. Autry was out of town, one of the attorneys for the Conservatorship Respondents, David Wade, telephoned Williams McDaniel. An employee informed him that Ms. Bleavins was not available. The trial court then contacted the firm directly, and again the employee indicated that Ms. Bleavins was not available. In turn, the trial court commenced a recess awaiting a return communication from Ms. Bleavins. At 11:03 a.m., when Ms. Bleavins had not yet returned

the call, the trial court continued the hearing, by written order, until 4:30 p.m. that afternoon.

When the trial court reconvened at 4:30 p.m. on December 13, 2023, Attorneys did not appear. The trial court again continued the hearing until the next morning, noting from the bench that Mr. Autry was scheduled to appear in the courthouse the next morning in another division. The trial court accordingly scheduled the hearing to commence on December 14, 2023, at 11:30 a.m., after the other matter was to have concluded. The trial court requested Mr. Wade, who was scheduled to attend the same matter as Mr. Autry in the other division, to inform Mr. Autry about the continuance in person. On December 14, 2023, the trial court convened at 11:30 a.m., and Attorneys did not appear. The trial court then conducted an *ex parte* evidentiary hearing relative to the second motion for recusal and concerning certain other matters pending in the conservatorship case. As the hearing began, the trial judge announced that he had decided to conduct a hearing respecting the second Rule 10B motion to recuse to determine "whether or not the motion is sufficient and also whether it is for the purpose of delay."

Notwithstanding these statements from the bench, the trial court did not rule on the motion to recuse during the hearing on December 14, 2023. Instead, the trial court proceeded to conduct an evidentiary hearing relative to Conservatorship Respondents' pending motions seeking clarification as to the status of Ms. Malone and requesting a restraining order against Attorneys. Based upon evidence presented during the hearing and the record as a whole, the trial court found "good cause" to enter an order on December 15, 2023, appointing an interim conservator for Ms. Malone. *See* Tenn. Sup. Ct. R. 10B, § 1.02 ("While the [recusal] motion is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken.").

Meanwhile, in *Malone I*, on December 26, 2023, Attorneys timely filed with our Supreme Court an accelerated application for permission to appeal this Court's Opinion. The Supreme Court denied the application on January 18, 2024. Mandate subsequently issued in *Malone I* and was entered by the trial court clerk on January 30, 2024. On January 9, 2024, before the mandate was entered in *Malone I*, the trial court entered an order denying Attorneys' second motion for recusal of the trial judge. On January 29, 2024, Attorneys timely filed the instant appeal from that order pursuant to Rule 10B. On February 6, 2024, we entered an order imposing a stay of all proceedings before the trial court pending resolution of this appeal. This Court also directed the appellees, Ms. Jackson and Mr. Royal, to file an answer.

On February 12, 2024, in the present appeal, Attorneys filed a "Motion to Declare Void Any Orders Entered by Trial Court After December 6, 2023" ("Motion to Void Orders"). In the motion, Attorneys asserted that the trial court erred in conducting a series of evidentiary hearings and entering several orders in the conservatorship case between

December 11, 2023, and January 23, 2024, the time period after this Court entered its Opinion in *Malone I* but before the mandate transferring jurisdiction back to the trial court was entered by the trial court clerk on January 30, 2024. Attorneys posited that all of the actions taken by the trial court prior to entry of the mandate were erroneous because the trial court lacked subject matter jurisdiction. *See* Tenn. R. App. P. Rule 43(b)-(c).

In addition to their argument that the trial court lacked subject matter jurisdiction, Attorneys advanced the position that any orders entered by the trial court between December 12, 2023, and January 9, 2024—the timeframe spanning the filing of their second recusal motion and the trial court's order denying same—were improper because they violated the mandatory stay imposed upon all trial court proceedings pending a Rule 10B recusal motion. *See* Tenn. Sup. Ct. R. 10B, § 1.02. Attorneys sought an order from this Court "rendering void all trial court orders entered after December 6, 2023."

On February 13, 2024, Ms. Jackson and Mr. Royal lodged a motion to stay this appeal pending a resolution of Attorneys' Motion to Void Orders or for an extension of time to file their answer. In support of their motion, Ms. Jackson and Mr. Royal noted that Attorneys' motion presented "a threshold issue" because "should this Court grant [Attorneys' motion,] this accelerated appeal should necessarily be dismissed." Because this Court did not rule on the motion to stay before the deadline for an answer had passed, Ms. Jackson and Mr. Royal timely filed their answer on February 20, 2024. They subsequently filed a response to the Motion to Void Orders on February 22, 2024.

This Court entered its Opinion regarding the second recusal appeal on March 6, 2024, *see In re Conservatorship of Malone*, No. W2024-00134-COA-T10B-CV, 2024 WL 964147(Tenn. Ct. App. Mar. 6, 2024), holding that the stay imposed by this Court during pendency of the first recusal appeal had divested the trial court of subject matter jurisdiction concerning the case until the date the mandate from that appeal was entered by the trial court. Accordingly, we vacated, for lack of subject matter jurisdiction, three orders that had been entered by the trial court: (1) the December 13, 2023 order setting a hearing date; (2) the December 15, 2023 order appointing Ms. Janelle Eskridge to serve as interim conservator of the person and estate of Ms. Malone; and (3) the January 9, 2024 order denying the second recusal motion.

Ms. Jackson, Mr. Royal, and Ms. Eskridge appealed this Court's decision to the Tennessee Supreme Court. In its Opinion entered on June 6, 2024, the Supreme Court reversed and remanded the matter to this Court, holding that the stay entered in *Malone I* did not divest the trial court of subject matter jurisdiction over the cause and that Attorneys had waived any argument that orders entered by the trial court prior to issuance of the mandate from the *Malone I* first recusal appeal should be vacated. *See In re Conservatorship of Susan Davis Malone*, No. W2024-00134-SC-T10B-CV, ___ S.W.3d ___, ___, 2024 WL 2826486, at *1 (Tenn. 2024).

- 7 -

Upon remand to this Court, Ms. Jackson, Mr. Royal, and Ms. Eskridge filed a motion requesting that we partially lift the stay of proceedings that was entered in the instant appeal by order dated February 6, 2024. On July 1, 2024, this Court entered an order partially lifting the stay in the instant case to allow the trial court to act on the remand order in a related matter.[6]

## II. Issues Presented

Attorneys present five issues for our review, which we have restated as follows:

1. Whether the trial judge demonstrated bias requiring recusal by "weaponizing" this Court's stay order when the judge refused to hear any matters or enter any orders involving Attorneys or Williams McDaniel.

2. Whether the trial judge demonstrated bias requiring recusal by using this Court's limited remand in the related Rule 10 appeals as a reason to conduct an evidentiary hearing outside the scope of the remand and by entering several orders arising from same.

3. Whether the trial judge demonstrated bias requiring recusal by entering *sua sponte* orders removing the guardian *ad litem* and attorney *ad litem* and closing the emergency conservatorship in the underlying conservatorship action two days prior to the scheduled evidentiary hearing.

4. Whether the trial judge demonstrated bias requiring recusal by conducting proceedings and taking action in the conservatorship matter while Attorneys' second motion for recusal remained pending.

5. Whether the trial judge demonstrated bias requiring recusal by entering an order granting a petition to substitute another attorney for Mr. Autry as personal representative by default in an unrelated proceeding.

---

[6] The "related matter" referred to here is the Tennessee Rule of Appellate Procedure 3 appeal from the emergency conservatorship action, docketed in the trial court as "PR-24346," the appeal which remains pending and is docketed as *In re Conservatorship of Susan Davis Malone*, W2023-00409-COA-R3-CV ("the Emergency Conservatorship Appeal"). In the Emergency Conservatorship Appeal, this Court had remanded the matter to the trial court on April 2, 2024, for the purpose of affording the trial court an opportunity to make corrections to the record. However, the trial court had stated that it could not act on the remand order in the Emergency Conservatorship Appeal while the stay entered in the instant Rule 10B appeal remained in place.

Ms. Jackson and Mr. Royal present the following additional issue on appeal, which we have restated as follows:

6. Whether the trial court's rulings were in the best interest of the ward, Susan Davis Malone.

## III. Standard of Review

Appeals from orders denying a motion to recuse are governed by Tennessee Supreme Court Rule 10B. The standard of review respecting such orders is *de novo* with no presumption of correctness. *See* Tenn. Sup. Ct. R. 10B, § 2.01. Concerning the standard of review, the Tennessee Supreme Court has recently explained:

> "Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing *Davis* [*v. Liberty Mut. Ins. Co.*], 38 S.W.3d [560,] 564 [(Tenn. 2001)]); *see also State v. Griffin*, 610 S.W.3d 752, 757-58 (Tenn. 2020). To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.
>
> To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC 2.11(A).
>
> Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606 S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis*, 38 S.W.3d at 564-65).
>
> The intermediate appellate courts have explained that the proponent of a recusal motion bears the burden of establishing that recusal is

appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case. *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016, at *2 (Tenn. Ct. App. Apr. 14, 2022). A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal. *Raccoon Mtn. Caverns and Campground, LLC v. Nelson*, No. E2022-00989-COA-T10B-CV, 2022 WL 3100606, at *3 (Tenn. Ct. App. Aug. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008)).

*Adams v. Dunavant*, 674 S.W.3d 871, 878-79 (Tenn. 2023). "To disqualify [a trial judge], prejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." *Alley v. State*, 882 S.W. 2d 810, 821 (Tenn. Crim. App. 1994) (internal quotation marks and citations omitted). We may, in our discretion, decide the appeal without oral argument. *See* Tenn. Sup. Ct. R. 10B, § 2.06.

## IV. Timeliness of Second Recusal Motion

As a threshold question, we must address whether Attorneys' second recusal motion was timely filed. *See Cook v. State*, 606 S.W.3d 247, 254 (Tenn. 2020) ("[A] claim of judicial bias may be deemed waived if a litigant . . . fails to file a written recusal motion in a timely manner after learning the facts that form the basis of the request.") (citation omitted). In its order denying Attorney's second motion for recusal, the trial court determined that Attorneys' motion for recusal was untimely:

> [Attorneys] filed the second Motion for Recusal [] just hours before a scheduled evidentiary hearing. Rule 10B requires that a recusal motion be filed no less than ten (10) days before a trial. [Attorneys] filed the second Motion for Recusal just minutes before midnight on the night before the evidentiary hearing. The midnight filing had the effect of giving the Court and the opposing party less than an hour notice of its filing before the trial. [Attorneys'] affidavits in support of the motion set out a timeline as the reason for filing the motion less than ten (10) days before the trial, but the affidavits did not show any cause, much less good cause, for the motion being filed less than twelve hours before trial. The motion, therefore, does not comply with the time requirements of Rule 10B.

On appeal, Attorneys counter that it would have been "physically impossible" for them to have filed the second recusal motion "more than ten days before the evidentiary hearing," considering that the case was not remanded back to the trial court from this Court until December 6, 2023 (less than ten days before the December 13, 2023 hearing) and the

trial court did not enter its order setting the hearing until December 11, 2023, providing the parties only two days' notice of the hearing.

Tennessee Supreme Court Rule 10B, § 1.01 provides in pertinent part:

Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal. The motion shall be filed no later than ten days before trial, absent a showing of good cause which must be supported by an affidavit.

The explanatory comments to this section further elucidate the intention undergirding the timeliness requirement:

Although the rule does not state a specific period of time within which the motion must be filed, a motion under this rule should be made promptly upon the moving party becoming aware of the alleged ground or grounds for such a motion. <u>The requirement that the motion be timely filed is therefore intended to prevent a party with knowledge of facts supporting a recusal motion from delaying filing the motion to the prejudice of the other parties and the case.</u> Depending on the circumstances, delay in bringing such a motion may constitute a waiver of the right to object to a judge presiding over a matter. Further, the delay in bringing a motion or the timing of its filing may also suggest an improper purpose for the motion.

Tenn. Sup. Ct. R. 10B, § 1, cmt. (emphasis added). The Tennessee Supreme Court has further elucidated:

If a litigant knows of facts indicating that a judge cannot fulfill the judicial obligations of fairness and impartiality, the litigant should request the judge's recusal by filing a written motion. *See* Tenn. Sup. Ct. R. 10B, § 1.01. Recusal motions should be filed when "the facts forming the basis of that motion become known." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (citing *Davis v. Tenn. Dep't of Emp't Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)). A litigant cannot manipulate the judicial process by knowing of allegedly improper judicial conduct but remaining silent until after the legal matter has been resolved unfavorably to the litigant. *Id.* (quoting *Tenn. Dep't of Emp't Sec.*, 23 S.W.3d at 313). Therefore, a claim of judicial bias may be deemed waived if a litigant either fails to file a written recusal motion or fails to file a written recusal motion in a timely manner

- 11 -

after learning the facts that form the basis of the request. *Id.* (citing *Tenn. Dep't of Emp't Sec.*, 23 S.W.3d at 313).

*Cook*, 606 S.W.3d at 254; *see also Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) ("A party cannot know of allegedly improper judicial conduct, gamble on a favorable result by remaining silent as to that conduct, and then complain that he or she guessed wrong and does not like the outcome.") (internal quotation and punctuation marks omitted) (citations omitted).

Despite the timeliness requirement, "Tennessee law concerning appeals filed under Rule 10B gives this Court some discretion to waive certain procedural deficiencies in order to reach the merits of a motion filed under Rule 10B." *See Ueber v. Ueber*, No. M2018-02053-COA-T10B-CV, 2019 WL 410703, at *3 (Tenn. Ct. App. Jan. 31, 2019) (citing *Bean*, 280 S.W.3d at 803 and *Boren v. Hill Boren, PC.*, 557 S.W.3d 542, 548 (Tenn. Ct. App. 2017) as examples of cases where this Court waived the timeliness requirement).

In the instant cause, we agree that it would have been impossible for Attorneys to file their second motion for recusal "no less than ten days before" the December 13, 2023 hearing because the hearing was set less than ten days after this Court remanded the case to the trial court on December 6, 2023. The trial court did not address in its order denying recusal whether the timing of Attorneys' second motion to recuse, filed the night before the scheduled hearing, was an attempt to manipulate the process. Instead, the trial court determined that Attorneys had not demonstrated good cause for the "[t]he midnight filing" of the recusal motion, which "had the effect of giving the [trial court] and the opposing party less than an hour notice of its filing before the trial."

Attorneys reference the timing of their second motion to recuse in their appellate brief by stating that they began preparing the motion for recusal as soon as the case was remanded from this Court on December 6, 2023:

> Upon reading this Court's Judgment entered in the First Recusal Appeal on December 6, 2023, [Attorneys] began preparing their Second Motion for Recusal. Having experienced [the trial judge's] rapid entry of orders, and having been given a preview of what was to come based on the November 6, 2023 hearing and the orders resulting therefrom, [Attorneys] knew it was a short matter of time before [the trial judge] would again appoint Lisa Jackson, be it individually or jointly, as conservator for Ms. Malone. [Attorneys] also anticipated that the appointment would be made without any semblance of a full and fair hearing on the merits. [Attorneys] were not wrong.

This statement acknowledges that Attorneys anticipated filing the second motion to recuse even before the trial judge had time to act in the case following this Court's remand.

- 12 -

Attorneys filed the second motion to recuse less than two days after the trial court entered the December 11, 2023 order setting the conservatorship action for evidentiary hearing to be held on December 13, 2023. Given the short length of time—less than two days—between the trial court's order and the scheduled hearing date, as well as Attorneys' affidavits setting forth this timeline, we determine that Attorneys demonstrated good cause for the filing of their second recusal motion on December 12, 2023.

## V. Limitation of Rule 10B Review on Appeal

We now turn to Attorneys' Motion to Void Orders, which remains pending before this Court. Attorneys request that this Court void all orders entered by the trial court following entry of this Court's December 6, 2023 Opinion in the *Malone I* recusal appeal. Regarding the scope of review in a Rule 10B appeal, this Court has explained:

> [T]he only order this Court may review on a Rule 10B accelerated interlocutory appeal is the trial court's order denying the motion to recuse. *Duke* [*v. Duke*], 398 S.W.3d [665,] 668 [(Tenn. Ct. App. 2012)]. Under Rule 10B, we may not "review the correctness or merits of the trial court's other rulings. . . ." *Id*.; *see also Stark* [ *v. Stark*], [W2019-00901-COA-T10B-CV,] 2019 WL 2515925, at *8 [(Tenn. Ct. App. June 18, 2019)] ("[W]hether the trial judge erred in his rulings on Husband's motions is not an issue in this limited, interlocutory appeal.").

*Adkins v. Adkins*, No. M2023-00384-COA-T10B-CV, 2021 WL 2882491, at *17 (Tenn. Ct. App. April 15, 2021). Ergo, the narrow issue before us in this Rule 10B appeal is "whether the trial court erred in denying the motion for recusal." *See McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb. 11, 2014) (internal citation omitted).

Notwithstanding the foregoing, the scope of our appellate review also includes the authority to review any orders entered by the trial court during the pendency of the motion to recuse. As this Court has recently explained:

> When a trial court ignores a pending motion to recuse and enters further orders in a case without making a finding of good cause as dictated by Rule 10B section 1.02, the orders entered during the pendency of the motion to recuse may be vacated on appeal. *See Ophelia Carney v. Santander Consumer USA*, No. M2010-01401-COA-R3-CV, 2015 WL 3407256, at *7 (Tenn. Ct. App. May 28, 2015) (vacating order entered while motion to recuse was pending); *Frances G. Rodgers v. Yarboro A. Sallee*, No. E2013-02067-COA-R3-CV, 2015 WL 636740 (Tenn. Ct. App. Feb. 13, 2015) (vacating orders entered after filing of motion to recuse but prior to trial court's decision to grant motion to recuse); *see also Neal v. Hayes*, No.

- 13 -

E2011-00898-COA-R3-CV, 2012 WL 260005 (Tenn. Ct. App. Jan. 30, 2012) (concluding prior to the enactment of Rule 10B that an order which simultaneously ruled on contested issues and granted a motion to recuse must be vacated in regard to the contested issues).

*In re Conservatorship of Tapp*, No. W2021-00718-COA-R3-CV, 2023 WL 1957540, at *10 (Tenn. Ct. App. Feb. 13, 2023) (quoting *State v. Coleman*, No. M2017-00264-CCA-R3-CD, 2018 WL 1684365, at *9 (Tenn. Crim. App. Apr. 6, 2018)).

Here, the trial court entered two orders during the pendency of the second motion for recusal: the December 13, 2023 order setting a hearing on the motion for recusal and the December 15, 2023 order appointing Ms. Eskridge as "Interim Conservator of the Person and Estate of [Ms.] Malone." Regarding all other contested orders, this Court takes no action due to the limited scope of review discussed above.[7] *See Adkins*, 2021 WL 2882491, at *17; *Conservatorship of Tapp*, 2023 WL 1957540, at *10.

In its December 15, 2023 order appointing Ms. Eskridge as interim conservator, the trial court explained its reasoning for setting Attorneys' second recusal motion for an evidentiary hearing as follows:

> The Court would not normally conduct an evidentiary hearing on a motion for recusal. The Court found such a hearing appropriate for three reasons:
>
> > The *PETITIONERS' MOTION FOR RECUSAL OF PROBATE JUDGE*:
> >
> > > Was filed less than ten (10) days before the trial in the pleadings, which included the Petition and Counter-Petition for appointment of a Conservator;

---

[7] The Motion to Void Orders contests the following orders issued by the trial court: (1) December 11, 2023 order setting a hearing date; (2) December 11, 2023 order discharging the guardian *ad litem* and attorney *ad litem*; (3) December 11, 2023 order setting aside all prior orders and entering a final judgment closing the emergency conservatorship in the related case number PR-24346; (4) December 13, 2023 order setting a hearing on Attorneys' second recusal motion; (5) December 15, 2023 order appointing an interim conservator for Ms. Malone; (6) January 9, 2024 order denying Attorneys' second recusal motion; and (7) January 23, 2024 order appointing permanent conservators over the person and estate of Ms. Malone. As stated in the body of this Opinion, we do not reach the merits of any orders other than those entered on December 13 and 15, 2023, and the recusal denial order entered on January 9, 2024, due to the limited scope of our review in a Rule 10B appeal.

Was filed minutes before midnight on the night before the trial;

The midnight filing had the effect of giving the Court and the opposing party less than an hour notice of its filing before the trial;

The Motion did not meet Rule 10B's requirement of filing at least ten (10) days before the trial but was filed less than twelve (12) hours before the trial;

[Attorneys'] affidavits set out a timeline as the reason for filing the motion less than ten (10) days before the trial, but the affidavits did not show any cause, much less good cause, for the motion being filed less than twelve hours before trial.

Because of the written motion's failure to state cause for the untimely filing, the Court wanted to give [Attorneys] the opportunity to testify under oath to demonstrate any good cause for filing the recusal motion less than twelve hours before the scheduled evidentiary hearing.

The motion for recusal fails to state any fact or argument that the Court has a bias against [Attorneys] that originated outside this case. The Court wanted to give [Attorneys] the opportunity to put in this record any fact that they contend demonstrates any bias of this Court that originated outside this case.

The pleadings allege that there is a dispute regarding who has authority to make decisions for [Ms. Malone]. The Court needed to hear evidence regarding the status of [Ms. Malone] to determine if there is good cause or not for the Court to take action in the best interest of [Ms. Malone] even while a motion for recusal is pending.

(Paragraph numbering omitted.)

The trial court explained that it scheduled the evidentiary hearing on the motion to

- 15 -

recuse because the court intended to afford Attorneys an opportunity to (1) "testify under oath" as to why the motion was filed within twelve hours of the hearing date and (2) explain any fact that demonstrated a perceived bias of the trial judge that originated "outside this case." The trial court further explained that it needed to hear evidence regarding Ms. Malone's status to determine if good cause existed to "take action" during pendency of the second recusal motion. Accordingly, the trial judge established good cause for entering the December 13, 2023 order setting the recusal motion for hearing, *see* Tenn. Sup. Ct. R. 10B § 1.02, and we therefore decline to render that order void.[8] We further find that neither the order scheduling the hearing nor the trial judge's explanation for setting the hearing in the order denying recusal exhibited any bias or prejudice against Attorneys that would warrant recusal. Neither arose from any extrajudicial source, *see Adams*, 674 S.W.3d at 878-79, and no bias or prejudice was apparent; to the contrary, the trial judge expressly stated that he set the hearing to aid Attorneys by affording them the opportunity to explain the perceived untimeliness of their motion to recuse and to bolster their argument for recusal with any facts showing bias originating from outside the case.

The trial court also determined that good cause existed to enter an order appointing an interim conservator for Ms. Malone, even during pendency of the second recusal motion:

> The proof before the Court established that [Ms. Malone] is a disabled person who lacks capacity to make certain decisions for herself, that the parties dispute who is authorized to make decisions for [Ms. Malone], and that in the absence of action by this Court [Ms. Malone] faces a risk of substantial harm. These factors establish good cause under Rule 10B of the Rules of the Tennessee Supreme Court for the Court to appoint a neutral Interim Conservator for [Ms. Malone] even while *PETITIONERS' MOTION FOR RECUSAL OF PROBATE JUDGE* is pending.

The trial court concluded that it was in Ms. Malone's best interest for the court to "immediately appoint a neutral Interim Conservator" for her. In the order denying recusal, the trial court included several pages of facts and procedural background related to Ms. Malone's status. Namely, the trial court recounted that Ms. Malone had previously, with the assistance of independent counsel, signed documents appointing Ms. Jackson and Mr. Royal as co-conservators for Ms. Malone and that Ms. Malone's status, particularly

---

[8] We note that the trial court included the above-stated reasons for setting the hearing in the order appointing an interim conservator and not in the order setting the hearing itself. *See* Tenn. Sup. Ct. R. 10B, § 1.02 (while a motion for recusal is pending, "the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated <u>in the order in which such action is taken</u>") (emphasis added). However, we determine that considering the close proximity in time—twelve hours—between the scheduled hearing concerning the conservatorship petition and the order setting a hearing on the second motion for recusal—the inclusion of the trial court's explanation in the later order appointing an interim conservator was proper.

regarding the matter of who was "legally authorized to assist her in the care of her person and property," remained in dispute. The trial court further noted that the ongoing dispute was being "communicated to [Ms. Malone's] care providers and financial institutions." Significantly, the trial court discerned that the dispute threatened to cause "substantial harm" to Ms. Malone in the absence of a decision clarifying her status. Accordingly, the trial court determined that good cause existed for appointing Ms. Eskridge as interim conservator in its order entered on December 15, 2023.

Upon careful review, we decline to render void the December 15, 2023 order appointing Ms. Eskridge as interim conservator. The trial court sufficiently articulated its reasoning and included a detailed explanation that good cause existed for the action taken. *See* Tenn. Sup. Ct. R. 10B, § 1.02. Moreover, we find no bias or prejudice warranting recusal arising from the December 15, 2023 order because in appointing an interim conservator, the trial judge focused entirely on concerns regarding the best interest of Ms. Malone. The fact that Attorneys disagree with and challenge the adverse ruling stemming from the December 15, 2023 order is not, standing alone, a basis for recusal. *See Adams,* 674 S.W.3d at 879 ("[R]ulings adverse to the proponent of a recusal motion are not, standing alone, grounds for recusal." (citing *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008))).

VI. Interpretation of the Stay Order in *Malone I*

In their second Rule 10B appeal, Attorneys posit that the trial judge exhibited bias against Attorneys when he "weaponized" the June 14, 2023 stay order entered by this Court in *Malone I* by refusing to preside over any lawsuits involving Attorneys or their firm, Williams McDaniel. Attorneys point specifically to the trial judge's purported refusal to adjudicate certain motions and petitions in other cases unrelated to this conservatorship action, namely: (1) a refusal to adjudicate a motion to remove a trustee, (2) a refusal to enter a consent order, and (3) a refusal to consider a petition to release funds to pay for a minor's college tuition. Attorneys further assert that the trial judge exhibited bias against them and Williams McDaniel by "refusing to allow Judge Kathleen N. Gomes to hear any matters by interchange" during pendency of the stay order in *Malone I*. As reviewed above, Attorneys filed a motion in *Malone I* seeking this Court's clarification of the stay order, which this Court accomplished through an order entered on August 8, 2023. The clarifying order stated "that the trial judge is permitted to hear and enter dispositive orders in other matters pending before him that involve [Attorneys] and attorneys practicing with [Williams McDaniel]."

In the trial court's order denying the second recusal motion, the trial court addressed at length the initial recusal motion, the *Malone I* appeal of the denial of that motion, and the *Malone I* stay order as such related to the trial judge's refusal to conduct hearings or otherwise take any action in cases involving Williams McDaniel:

- 17 -

[Attorneys] argue that this Court's refusal to hear any matter involving any attorney associated with their firm is grounds for recusal. In their May 18, 2023 first Motion for Recusal at paragraph 2, on page 49, [Attorneys] requested this relief:

> 2.    That upon a hearing, this Motion be granted and that this Court immediately recuse itself from the Emergency Conservatorship Matter, the Permanent Conservatorship Matter, and the Post-Divorce Contempt Matter, *and from any other matter involving any attorney with William McDaniel, PLLC. (emphasis added)*[.]

On June 2, 2023, this Court issued a twenty-two (22) page Order denying that first Motion for Recusal. After denying the Rule 10B Motion for Recusal, the Court was prepared to move forward hearing all matters involving any attorney with [Attorneys'] firm.

[Attorneys] appealed the Order on [the first] Motion for Recusal. The appeal did not automatically stay the proceedings of the trial court. Without a stay, the Court would have continued to hear matters involving any attorney with [Attorneys'] firm. In their June 7, 2023 Court of Appeals filing [*Malone I*], [Attorneys] asked that this Court be disqualified from hearing "any other matter involving any attorney with Williams McDaniel, PLLC:"

> The actions of [the trial judge] . . . announced his bias against the law firm of Williams McDaniel, PLLC and its several attorneys that regularly appear before [] him.
>
>   * * * *
>
> this Court should **immediately** disqualify [the trial judge] in all matters involving any attorney with the law firm of Williams McDaniel, PLLC.
>
>   * * * *
>
> For the reasons stated above, [Attorneys] are of the opinion and belief that the only way to protect the interests of Susan Davis Malone is for this Court to recuse [the trial judge] from presiding over the Emergency Conservatorship Matter, the Permanent Conservatorship Matter, and the Post-Divorce Contempt Matter, and . . . [Attorneys] respectfully request that

- 18 -

this Court further disqualify [the trial judge] **from presiding over any other matter involving any attorney with Williams McDaniel, PLLC.**

Accelerated Interlocutory Appeal of Rule 10B Order, filed in the Court of Appeals June 7, 2023, at pages 34, 35, and 67.

On June 9, 2023, [Attorneys] asked the Court of Appeals to stay "all trial court proceedings." The Motion for Stay includes the following statements:

10.    This Court [the Court of Appeals] has authority to stay all trial court proceedings pending resolution of [Attorneys'] Rule 10B Appeal. Tenn. S. Ct. R. 10B § 2.04; *See Beaman v. Beaman*, 2018 Tenn. App. LEX1S 609 (Oct. 19, 2018).

11.    [Attorneys] rely upon the statements set forth in their Rule 10B Appeal, the statements set forth herein and the attached Exhibits as grounds for the Order staying all trial court proceedings pending resolution of [Attorneys'] Rule 10B Appeal.

WHEREFORE, PREMISES CONSIDERED, [ATTORNEYS] RESPECTFULLY PRAY:

1.    That this Court enter an Order **staying all trial court proceedings** pending resolution of [Attorneys] Rile (*sic*) 10B Appeal. (emphasis supplied.)

Motion to Stay Trial Court Proceedings, filed with the Court of Appeals June 9, 2023.

The Motion to Stay incorporated [Attorneys'] Rule 10B appeal filings, which allege that this judge is so biased that the Court should "immediately" disqualify him from hearing "any other matter involving any attorney with Williams McDaniel, PLLC."

Upon review of the trial court's thorough discourse on the matter and the relevant documents referenced therein, we conclude that Attorneys have not met their burden to

show that the trial judge acted with bias or prejudice against them when he refused to preside over any matters involving Attorneys or Williams McDaniel. Given that Attorneys repeatedly requested that the trial judge no longer preside over "any other matter involving any attorney with Williams McDaniel, PLLC," we decline to interpret the trial judge's grant of that request as prejudicial to Attorneys or their law firm. In other words, a person of ordinary prudence, knowing that Attorneys had requested the trial judge to refrain from hearing any matter involving their law firm, would be hard pressed to interpret the trial judge's actions in complying with such request as a basis for recusal. *See* Tenn. Sup. Ct. R. 10, RJC 2.11; *Cook*, 606 S.W.3d at 255. Moreover, each of the trial judge's actions to which Attorneys assign bias was predicated on the trial court's interpretation of the stay order imposed in *Malone I*. In the order denying recusal, the trial court explained:

> This trial court must follow orders of the Court of Appeals. *Holder v. Tenn. Judicial Selection Comm'n*, 937 S.W.2d 877, 881 (Tenn. 1996). Regarding any matter involving any attorney with [Attorneys'] firm, the stay prohibited this Court from conducting any hearings, entering any Orders, or requesting a substitute judge [to] act. The stay prohibited this Court even from approving an order of transfer. When [Attorneys] realized the practical effect of their request that the Court of Appeals stay all matters involving their firm, they asked the Court of Appeals to modify the stay. When this Court received the Court of Appeals' order clarifying the stay, this Court again began hearing matters involving [Attorneys'] firm.

> [Attorneys] charge this Court with bias because this Court followed the Court of Appeals' grant of the very relief [Attorneys] sought. [Attorneys'] complaint is with their own appellate pleadings, not with this trial court. An objective person, knowing the facts known to this Court, would not perceive this Court's actions as biased. This is no grounds for recusal.

(Footnote omitted.) Therefore, Attorneys have not satisfied their burden to establish bias or prejudice arising from an "extrajudicial source." *See Adams*, 674 S.W.3d at 878-79; *Alley*, 882 S.W.2d at 821. Furthermore, even if the trial judge's interpretation of this Court's stay order was incorrect, such error, without more, is not sufficient to prove bias. *See Adams*, 674 S.W.3d at 879 ("Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." (quoting *Alley*, 882 S.W.2d at 821)).

Concerning Attorneys' postulate that the trial judge showed bias when he "expressly forbade Judge Gomes from entering any further Orders by interchange for any attorney with Williams McDaniel," we find no direct evidence in the record to support this assertion. *See Runyon v. Runyon*, No. W2013-02651-COA-T10B, 2014 WL 1285729, *9 (Tenn. Ct. App. Mar. 31, 2014) ("A claim of bias or prejudice must be based on facts, not speculation

or inuendo[.]"). In the order denying recusal, the trial court explained that it had interpreted the Court of Appeals' stay order as prohibiting any transfer to another court: "The stay prohibited [the trial court] even from approving an order of transfer." However, the order denying recusal does not indicate that the trial judge forbade Judge Gomes from hearing matters involving Williams McDaniel.

Attorneys support this claim with an email sent to another attorney at Williams McDaniel from Judge Gomes's clerk regarding a separate matter unrelated to this lawsuit. In the email, the clerk stated:

> I asked Judge [Gomes] about this & she was going to hear it for you, but after Judge Townsend's fit of disrespect a few minutes ago, we will not be able to hear or sign any Division 2 Orders for anyone in your firm & for any matter.

The email does not mention the instant case, does not reference Attorneys, and does not state that the trial judge "forbade" Judge Gomes from presiding over cases involving Williams McDaniel.

To further bolster their argument, Attorneys include in the record a transcript from August 8, 2023, the day Attorneys and other lawyers from Williams McDaniel appeared in court to address the trial judge's refusal to hear matters involving their firm. The following relevant exchange occurred between Mr. Autry and the hearing officer on that date:

| | |
|---|---|
| Hearing Officer: | Okay. [The trial judge] said that he still could not hear [the unrelated matter] at this point, but that he needed to shut down the courtroom at this point. |
| Mr. Autry: | And we can't go next door to Judge Gomes either? |
| Hearing Officer: | No, I don't think so. |
| [Williams McDaniel attorney]: | So he is not hearing our petition to terminate a guardianship, and he's not allowing us to take it to any other judge by interchange; is that what you're saying? |
| Hearing Officer: | I believe. |

Upon review, we find nothing in this exchange to demonstrate bias or prejudice on the part of the trial judge. Although the hearing officer responded in the affirmative when Mr.

Autry inquired whether the trial judge was refusing to permit Attorneys to take their matter to any other judge, this exchange fails to establish that the trial judge expressly "forbade" Judge Gomes from hearing matters involving Williams McDaniel attorneys. Hence, this contention does not establish a basis for recusal or disqualification of the trial judge. *See Runyon*, 2014 WL 1285729, at \*9.

## VII. Trial Court's Actions After the *Malone I* Stay Was Lifted

Attorneys argue that after this Court lifted the stay in *Malone I* and remanded the conservatorship action, the trial judge "seized that remand as an opportunity to perpetuate his bias against Petitioners and [Williams McDaniel]." Attorneys specifically propound that the trial judge "could not resist the opportunity to once again punish [Attorneys] for challenging his authority in their motions to alter or amend, and for filing the First Recusal Motion." Moreover, Attorneys contend that the trial judge used an "aggressive tone" when speaking to Mr. Autry during the November 6, 2023 status hearing and that the trial judge prejudiced Attorneys by setting an evidentiary hearing to begin two minutes after the conclusion of the status hearing.

After delineating several examples of the trial judge's purported bias, Attorneys aver:

> Accordingly, [the trial judge] knew that when he *sua sponte* set the evidentiary hearing to occur two minutes following the status conference, Rule 3.7 could potentially preclude one or both [Attorneys] from acting as advocates in the hearing. By denying [Attorneys] any real opportunity to retain counsel and prepare for an evidentiary hearing, [the trial judge] was free to "solve" the conflict he created by *sua sponte* removing [Attorneys] from advocating in the Permanent Conservatorship. It was, in fact, [the trial judge] who intentionally sought to prejudice [Attorneys] and [Williams McDaniel].

We will address each of the trial court's actions in turn.

### A. Decision to Hold the November 6, 2023 Evidentiary Hearing

In the order denying recusal, the trial court explained its decision to set an evidentiary hearing following the status conference on November 6, 2023:

> The Court held an evidentiary hearing on November 6, 2023, as part of its (now vacated) understanding that an evidentiary hearing was within the scope of the Court of Appeals' mandate that it adjudicate certain motions.

- 22 -

Mindful of its obligation to obey the October 10, 2023 orders of the Court of Appeals, this Court found that it was not in the best interest of Susan Davis Malone for the Court to adjudicate the May 8, 2023 Motions to Alter or Amend without also adjudicating the other Motions to Alter or Amend. Interpreting the Court of Appeals' orders in the interest of judicial economy and in the best interest of Susan Davis Malone, this Court interpreted that order to require it to adjudicate not only the May 8, 2023 Motions to Alter or Amend, but also to adjudicate the Motions to Alter or Amend filed on January 10, 2023 in the Emergency Conservatorship and on June 5, 2023, in the Conservatorship and in the post-divorce matter.

* * *

The Court considered holding an evidentiary hearing to be a part of the "adjudication" the Court of Appeals had ordered on remand.

Although the Court held the hearing on November 6, 2023, and entered orders thereon on November 7, 14, and 15, [Attorneys] did not file a motion to recuse based on this action until they filed the second Motion for Recusal on December 12, 2023.

Upon careful review, we find that even though the trial court misinterpreted the scope of the remand from the *Malone I* Court—an error the trial court acknowledged—there is no indication of bias in the trial judge's explanation for holding the evidentiary hearing. Furthermore, Attorneys have neither argued nor provided evidence of any bias or prejudice arising from an extrajudicial source. *See Adams*, 674 S.W.3d at 878-79; *Alley*, 882 S.W.2d at 821. Instead, each action the trial judge took relative to setting the evidentiary hearing on November 6 was directly related to the conservatorship action. Accordingly, we find no inherent bias or personal prejudice toward Attorneys in the trial court's decision to hold the evidentiary hearing such that recusal would be necessary. *See Adams*, 674 S.W.3d at 878-79. For the above-stated reasons, the trial court's setting of the evidentiary hearing on November 6, 2023, does not, without more, present a sufficient basis for recusal.[9]

### B. Disqualification of Attorneys Pursuant to Tennessee Supreme Court Rule 3.7

Attorneys further posit that the trial judge exhibited bias against them when he *sua sponte* relied on Tennessee Supreme Court Rule 3.7 to disqualify Attorneys from serving

---

[9] We further determine that the trial court properly questioned Attorneys' delay in raising this issue as a basis for recusal. *See Cook*, 606 S.W.3d at 254 ("A litigant cannot manipulate the judicial process by knowing of allegedly improper judicial conduct but remaining silent until after the legal matter has been resolved unfavorably to the litigant.").

as counsel during the November 6, 2023 evidentiary hearing. Rule 3.7(a) provides in pertinent part:

> A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.

During the status hearing held November 6, 2023, the trial judge explained from the bench his reasoning for *sua sponte* disqualifying Attorneys as well as any other attorney from Williams McDaniels to represent Ms. Malone:

> Well, we have one lawyer who is married to another lawyer and then we have another lawyer, Mr. Snyder, who works closely in a small firm with the two other lawyers. The Court cannot find any way in which this law firm can represent Susan Davis Malone in this petition because it violates Rule 3.7. The Court notes in the first comment to this rule combining the roles of advocate and witness can prejudice the tribunal and opposing parties and can also involve conflict of interest between the lawyer and the client.
>
> Now, [Attorneys] could have elected to remedy this problem. They could have retained outside counsel to represent them. They have not. So the Court finds that it is proper for them not to serve in this case as the attorney for Susan Davis Malone. Other notes include such—such things as conversely opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. Well, this is difficult for the tribunal also.

In the order denying recusal, the trial court further elucidated its reasoning for disqualifying Attorneys pursuant to Rule 3.7 in a detailed recounting of the procedural history of the case:

> After the commencing [of] the evidentiary hearing [by] the Court, the Court *sua sponte* raised the issue of whether the attorneys of record from Williams McDaniel, PLLC should be disqualified under RPC 3.7, which prohibits a lawyer from acting as an advocate at a trial in which that lawyer is likely to be a necessary witness.

On November 22, 2022, [Attorneys] filed a sworn petition seeking an emergency conservatorship (PR-24346) for [Ms. Malone]. That petition described [Attorneys] as "Attorney and Attorney in Fact" for [Ms. Malone] and advised the Court that [Ms. Malone] had executed durable powers of attorney dated September 19, 2018 naming [Attorneys] as her Attorneys-in-Fact. [Attorneys] alleged that they "have managed all of [Ms. Malone's] personal, financial, health care and legal affairs." Given the sworn statements in the emergency petition, this Court appointed them Emergency Conservators of the Person and Property of [Ms. Malone].

[Attorneys] both signed oaths stating that the facts in the petition were true to the best of their knowledge, information and belief.

When the emergency conservatorship expired due to statutory time limits, [Attorneys] filed a petition seeking a conservatorship for [Ms. Malone] (PR-24906) on January 25, 2023. Again, they described themselves as "Attorney and Attorney in Fact" for [Ms. Malone] and advised the Court that [Ms. Malone] had executed durable powers of attorney dated September 19, 2018, naming them both as her Attorneys-in-Fact. [Attorneys] alleged that they "have managed all of [Ms. Malone's] personal, financial, health care and legal affairs." They further stated that they believed that [Ms. Malone's] daughter was seeking to be her mother's fiduciary solely to take control of post-divorce litigation in which [Ms. Malone] was owed, as [Attorneys] stated in their petition, "millions of dollars in past due alimony."

As of the date of the evidentiary hearing [held on November 6, 2023], the power of attorney designating [Attorneys] as Attorneys-in-Fact had not been revoked by the Court. While later documents arguably revoked that power of attorney, that was an open question as of the date of the hearing. As of the date of the evidentiary hearing, then, [Attorneys] owed a fiduciary duty to [Ms. Malone], the principal.

[Attorneys] are petitioners and lawyers of record for [Ms. Malone].

[Attorneys] have filed many pleadings in this case as lawyers.

[Attorneys] have made numerous arguments as lawyers.

[Attorneys] argued in filed Motions to Alter or Amend that [] this Court had erred by making decisions without conducting evidentiary hearings.

- 25 -

The October 31 Order partially granted [Attorneys'] Motions to Alter or Amend and set the motions for an evidentiary hearing.

The November 6 hearing was the first evidentiary hearing in this case.

This case is a contested matter. [Ms. Malone's] daughter, Lisa Malone Jackson, has asked to be appointed Conservator. The issue of who should serve as the Conservator of Susan Davis Malone has been contested in this Court for over a year.

Testimony at the hearing of who should be appointed conservator would necessarily include testimony from [Attorneys] as petitioners and witnesses to [Ms. Malone's] designation of them as her fiduciaries. Their testimony relates to contested issues.

The testimony of [Attorneys] that could have been presented at the November 6 evidentiary hearing would not have related to the nature and value of legal services rendered in this case. The November 6 evidentiary hearing was not to encompass any issues of attorney fees.

[Attorneys] identified themselves in the emergency conservatorship petition as Attorneys-in-Fact for [Ms. Malone]. She was their client for purposes of the November 6 hearing.

[Ms. Malone] could not be made to choose between [Attorneys] as witnesses or as advocates in this evidentiary hearing.

It did not work a substantial hardship on Susan Davis Malone for [Attorneys] to be disqualified as lawyers in this case so that they can be witnesses.

[Attorneys] and the other members of [Williams McDaniel] were well aware of the obligation not to serve both as advocate and counsel. Counsel adverse to [Attorneys] raised this issue in *Autry and Bleavins v. Stricklin*, CT-2961-21, pending in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. [Attorneys] were not only aware of but had recently litigated issues raised by Supreme Court Rule 8, Rule of Professional Conduct 3.7, with the first comment to the rule being that "*combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client*."

- 26 -

This Court did not raise the issue of whether [Attorneys] and the lawyers of record from [Williams McDaniel] should be disqualified under RPC 3.7 before the November 6 hearing, because RPC 3.7 prohibits a lawyer from acting as an advocate <u>at a trial</u> in which that lawyer is likely to be a necessary witness.

Under RPC 3.7 a lawyer is tasked with the responsibility to determine if the lawyer is likely to be a necessary witness in trial[;] the rule states that a lawyer <u>shall not</u> advocate at the trial if the lawyer is likely to be a necessary witness.

[Attorneys] knew or should have known from the moment they filed the initial petition in this case that each of them would be a necessary witness at the trial on the merits.

[Attorneys] were familiar with RPC 3.7 and [chose] to not raise any issue under RPC 3.7.

[Attorneys] intentionally decided to attempt to serve as lawyer in the trial in this matter instead of simply abiding by RPC 3.7 and retaining a lawyer without a conflict to serve as the lawyer of record in this matter.

[Attorneys'] planned attempt to advocate as lawyers at the evidentiary hearing would have prejudiced both the tribunal and the opposing party.

[Attorneys'] planned attempt to advocate as lawyers at the trial involved a conflict of interest between the lawyers and their client, Susan Davis Malone.

(Citations to the record and footnotes omitted.)

The trial court correctly interpreted Rule 3.7 as prohibiting a lawyer from "acting as an advocate at a trial in which that lawyer is likely to be a necessary witness." Following its thorough delineation and consideration of the procedural history of the case, the trial court reviewed the facts and determined that none of the exceptions to Rule 3.7 applied. Specifically, the trial court concluded that the testimony Attorneys would likely present at trial was not uncontested, *see* Tenn. Sup. Ct. R. 3.7(a)(1); the potential testimony would not relate to the "nature and value of legal services rendered," *see* Tenn. Sup. Ct. R. 3.7(a)(2); and disqualification of Attorneys from their advocacy role would not work "substantial hardship" on Ms. Malone, *see* Tenn. Sup. Ct. R. 3.7(3). Accordingly, the trial court did not exhibit bias or prejudice against Attorneys by prohibiting them from serving as advocates for Ms. Malone at the evidentiary hearing. We further determine that the trial judge did not exhibit bias by *sua sponte* raising the potential conflict when the matter came

on for hearing.  *See* Tenn. Sup. Ct. R. 3.7 cmt. [2] ("The tribunal has a proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness.").  Therefore, these actions, standing alone, are not a basis for recusal.

### C.  Timing of the November 6, 2023 Evidentiary Hearing

Attorneys advance the postulate that the trial judge "intentionally sought to prejudice" Attorneys and their law firm when he set the evidentiary hearing "to occur two minutes following the status conference," knowing that this action "could potentially preclude" Attorneys from acting as advocates in the hearing because of the prohibition outlined in Rule 3.7.  Attorneys further contend that the trial judge "offered similarly inadequate reasoning" for disqualifying other attorneys with Williams McDaniel from serving as counsel in the matter by making an "unsupported, conclusory, and false statement" that a financial conflict of interest extended to other members of the firm.

During the November 6 hearing, the trial court articulated from the bench its interpretation of the *Malone I* Court's instructions on remand and further explained the trial court's rationale for immediately moving forward with an evidentiary hearing:

> The net effect is that the respondent, Susan Davis Malone, is in the same position she was in when the emergency petition was filed in this case.  There is a question as to who legally represents her, her property and her person.  At that time there was a substantial risk of harm pled.  Based on that, the Court must move quickly to set the evidentiary hearings because she's in the same position she was before this case was started.
>
>    It's 2:45.  The Court will set the evidentiary hearing on this matter for 2:47 today.

In the order denying recusal, the trial judge further explained that he held the evidentiary hearing on November 6, 2023, because he believed such hearing was "within the scope" of the *Malone I* remand order and holding such hearing would promote "judicial economy."

After conducting a *de novo* review, we find that the trial court's action in quickly setting the evidentiary hearing, without more, does not exhibit a level of bias that requires disqualification or recusal.  *See Alley*, 882 S.W.2d at 821.  We reiterate that "the proponent of a recusal motion bears the burden of establishing . . . that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case." *Adams*, 674 S.W. 3d at 879 (citing *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016 (Tenn. Ct. App. Apr. 14, 2022)).  Attorneys have not proffered facts to support an assertion that the trial judge was biased against them arising from sources outside the litigation of the instant case.  Moreover, the record indicates that opposing counsel received the same short notice of the evidentiary hearing

as did Attorneys, such that it does not appear that Attorneys were unfairly prejudiced by the trial court's setting of the evidentiary hearing so quickly. *See, e.g.*, *Smith v. Daniel*, No. M2019-02083-COA-T10B-CV, 2019 WL 6825976, at *4 (Tenn. Ct. App. Dec. 13, 2019) (claim of lack of notice which did not prejudice the party did not warrant recusal of the trial judge). Furthermore, we note that it is well-settled that trial courts maintain broad discretion to control their dockets. *See Justice v. Sovran Bank*, 918 S.W.2d 428, 429-30 (Tenn. Ct. App. 1995) ("A trial court has broad discretion in the conduct of trials and the management of its docket."). In sum, we find nothing included in the trial judge's statements during the hearing or in the order denying recusal to establish bias requiring recusal.

VIII. Opportunity to Testify During November 6 Evidentiary Hearing

Attorneys assert that once they had been disqualified from serving as counsel in the conservatorship matter, the trial judge further "prejudiced" them when he "denied" them "an opportunity to testify during the November 6 hearing." In the order denying recusal, the trial court did not directly address this contention, but the order contains multiple references to "testimony" that Attorneys could have provided during the evidentiary hearing had they been present. Moreover, the transcript from the hearing reveals that the trial judge expressly afforded Mr. Autry the opportunity to remain during the evidentiary hearing in his capacity as a witness:

| Trial Court: | Okay. Now, the Court is going to proceed with this hearing for many reasons that involved the substantial interests of Susan Davis Malone. Mr. Autry is no longer an attorney in this case because he's been disqualified, and he will not advocate anymore in this case before this Court. Mr. Autry as a witness, if you want to leave, you can leave. You waive being here on your own accord. If you want to stay, you may stay, but you will not address the Court. |
|---|---|

\* \* \*

| Trial Court: | Let me just make one thing clear. There is a decorum in the court. The Court does not answer questions, okay, and I appreciate the fact that counsels do not ask me questions. The Court especially does not answer questions of witnesses. Deputy, if you need to— |
|---|---|

| Mr. Autry: | Your Honor, I just asked for a point of clarification. Obviously the Court does not wish to clarify its ruling. I will depart since I am, by the Court's order, only a |
|---|---|

- 29 -

witness at this point. Thank you for your time and attention, Your Honor.

This exchange evinced that although the trial court determined that Mr. Autry would "not address the Court" during the evidentiary hearing, that instruction concluded only Mr. Autry's representation as <u>counsel</u> after he had been disqualified but did not prohibit him from remaining and testifying as a <u>witness</u>. It further reveals that both the trial court and Mr. Autry understood that Mr. Autry could remain for the evidentiary hearing to testify as a witness and that Mr. Autry chose to leave the proceedings.

Regarding Ms. Bleavins, the trial court stated from the bench upon the conclusion of the evidentiary hearing that the court "would have allowed the others, Ms. Bleavins, to stay so they could be potential witnesses" but that when they "did not appear or stay" the court reasoned "that they have waived the evidentiary hearing." At the outset of the hearing, Mr. Autry explained that Ms. Bleavins was not present because she was "covering a client appointment" that could not be rescheduled. We find nothing in the record indicating whether Mr. Autry attempted to contact Ms. Bleavins so that she might appear as a witness at the evidentiary hearing. Moreover, although he raised several objections prior to the start of the evidentiary hearing, at no point did Mr. Autry object to the evidentiary hearing proceeding without Ms. Bleavins in attendance. Accordingly, Attorneys have not sufficiently supported this argument as a predicate for recusal.

IX. November 2023 Orders

Attorneys argue that the trial judge "acted with bias and prejudice" against them when he entered three orders flowing from the November 6, 2023 evidentiary hearing: (1) the November 7, 2023 order appointing Ms. Jackson and Mr. Royal as conservators for Ms. Malone's person and property; (2) the November 14, 2023 order "on status hearing on the five (5) motions to alter and amend"; and (3) the November 15, 2023 order "on evidentiary hearing on five [] motions to alter or amend." Attorneys posit that the November 7, 2023 order was "replete with factual inaccuracies and legal fallacies" and that the trial judge "expedited" appointment of a conservator based on the judge's "contempt" and "desire to completely remove [Attorneys] from serving as fiduciaries and counsel for Ms. Malone." They further contend that the order entered on November 14 was based upon, *inter alia*, "unfounded, unsupported, and contrary to the actual posture of the matter" concerns regarding Ms. Malone and that the November 15 order "shouted" the trial judge's bias against Attorneys and their firm "to the masses" and contained "recklessly, untrue and unsupported statements" made by the judge "in an attempt to rationalize his conduct during the November 6, 2023 evidentiary hearing."

All three orders had been deemed void by this Court in the Rule 10 Extraordinary Appeals, and that decision has been subsequently reiterated by the *Malone I* Court in its November 30, 2023 order, a fact which the trial judge acknowledged in the order denying

recusal. We revisit these three orders now only to determine whether the trial judge's rulings therein contain any statement or ruling expressing bias or prejudice sufficient to warrant recusal. The November 7 order appointed Ms. Jackson and Mr. Royal as co-conservators for Ms. Malone, a decision clearly adverse to the position of Attorneys. However, adverse decisions such as this one do not, standing alone, present a basis for recusal. *See Adams*, 674 S.W.3d at 879 (citing *Cannon*, 254 S.W.3d at 308). We reiterate: "[T]he mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal." *Id*. (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)). The November 14 order outlined the trial court's reasons for scheduling the November 6 evidentiary hearing for 2:47 p.m., only two minutes following the conclusion of the status hearing, a decision we have reviewed and addressed above. We find nothing in either of these two orders that exhibits bias or prejudice against Attorneys warranting recusal.

The November 15 order memorialized and explained the trial court's decision to disqualify Attorneys pursuant to Rule 3.7 and concluded by transferring certain of Ms. Malone's rights to Ms. Jackson and Mr. Royal as co-conservators. Attorneys urge that the trial judge showed bias against them in this order when he determined that Attorneys should have been aware of the requirements of Rule 3.7 because they had recently litigated the same issues in another case. The trial court stated in relevant part:

> [Attorneys and their firm] are well aware of the obligation not to serve both as advocate and counsel. Counsel adverse to [Attorneys] raised this issue in *Autry and Bleavins v. Stricklin*, CT-2961-21, pending in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. [Attorneys] are not only aware of but have recently litigated issues raised by Supreme Court Rule 8 [and RPC 3.7].

The trial judge similarly discussed the *Stricklin* case in the order denying recusal. Attorneys propound that the trial judge "independently searched the public records" to find the "wholly unrelated [*Stricklin*] case involving [Attorneys]," and "surmised from his review" of that case that Attorneys should have been familiar with Rule 3.7 but had intentionally failed to adhere to the rule in the instant case.

The *Stricklin* case is not included in the record on appeal, and the trial judge does not state in either the November 15, 2023 order or the order denying recusal how he came to be familiar with the case. Thus, Attorneys' claim that the trial judge "independently searched the public records" is not substantiated in the record. A claim of bias or prejudice must be based on facts, not speculation or inuendo. *See Runyon*, 2014 WL 1285729, at *9. Furthermore, the trial judge does not, in either order, opine as to the procedure or outcome of the *Stricklin* case and renders no comment about the particulars of the case beyond noting that opposing counsel in the *Stricklin* case had filed a motion to disqualify Attorneys based on Rule 3.7 such that Attorneys should have been familiar with the rule. We

- 31 -

therefore conclude that the trial judge's knowledge of and reference to the *Stricklin* case does not, without more, establish bias sufficient to warrant recusal.

Upon a careful and thorough review of the three November 2023 orders entered by the trial court, we discern no bias or prejudice sufficient to support recusal of the trial judge.

## X.   December 11, 2023 Orders

Attorneys argue that the trial judge acted with bias and prejudice against them when he entered two orders on December 11, 2023, "*sua sponte*, and without any explanation," after the *Malone I* Court entered its opinion denying the first recusal appeal and subsequently remanded the case to the trial court.  The initial contested order was an "Order Discharging Guardian ad Litem and Attorney ad Litem," and the second was an "Order Setting Aside All Prior Orders in PR-24346 [the related emergency conservatorship case] and Entering a Final Judgment Closing the Emergency Conservatorship."

Regarding the order discharging the guardian and attorney *ad litem*, Attorneys do not assert that the order violated any law or procedure.  Instead, they contend that the trial judge entered this order because the judge was "making preparations to institute his plan, which included the complete exclusion of [Attorneys] from serving in any capacity on behalf of Ms. Malone."  Attorneys aver that there was "no logical explanation" for this "sudden removal" except that the trial judge desired to "remove from his courtroom any possible disruption to his plan to punish [Attorneys] by precluding them from serving as fiduciaries and counsel for Ms. Malone."  The order discharging the guardian and attorney *ad litem* contains no explanation for the court's action, and the order denying recusal does not mention the order.  In their recusal appeal, Attorneys provide bare assertions as to the trial judge's motive for entering the order, and, absent factual support, these are not sufficient to prove bias or prejudice by the judge.  *See Runyon*, 2014 WL 1285729, at *9 ("[A] claim of bias or prejudice must be based on facts, not speculation or innuendo[.]").  Accordingly, we find that the trial court's order discharging the guardian and attorney *ad litem* does not present a sufficient basis to warrant recusal of the trial judge.

Attorneys similarly contend that the trial judge exhibited bias and prejudice against them when he "exceeded his jurisdiction and entered the December 11 Final Order Closing Emergency Conservatorship."  In that order, which the trial court entered in the related emergency conservatorship case, docket number PR-24346, the trial court explained that the "parties continue to adjudicate their claims for relief under PR-24906."  Accordingly, the court decided to "set aside its findings of fact and rulings in all its Orders" that had been entered in PR-24346 so the matters could be "considered anew" in the instant conservatorship action (PR-24906).  On appeal, Attorneys posit that the trial judge entered this order "to fabricate a conflict over who had authority to act on behalf of Ms. Malone" and that the judge "sought to prejudice [Attorneys]" by removing their status as persons with priority to serve as Ms. Malone's conservators.  Again, such assertions, without

factual support, are not sufficient to prove bias or prejudice on the part of the judge. *See id.* Furthermore, even if the trial judge erred by "exceeding his jurisdiction" in closing the emergency conservatorship case, and we do not reach that issue here, such error is not a basis for recusal. *See Adams*, 674 S.W.3d at 879.

## XI. Actions During Pendency of the Second Recusal Motion

Attorneys aver that the trial judge's "bias and prejudice" against Attorneys continued to be evident "when he took further action in the permanent conservatorship while [Attorneys'] second recusal motion was pending." We have previously determined that the trial court properly found good cause to enter the December 13, 2023 order scheduling a hearing regarding the second recusal motion and the December 15, 2023 order appointing an interim conservator of the person and estate of Ms. Malone. We therefore proceed to analyze the remaining sub-issues presented by Attorneys[10] relative to the trial judge's actions after the second recusal motion was filed.

Attorneys assert that they felt "threatened by the aggressive nature and tone" of the trial judge's "repeated attempts" to contact Attorneys at their office on December 13, 2023. Attorneys contend that the trial judge was "irritated" with Attorneys when they were not available for the December 13, 2023 hearing. They recount in their appellate brief that the trial judge instructed opposing counsel to call Attorneys' office, and when staff told him Attorneys were unavailable, the trial judge personally contacted Attorneys' office and addressed staff "in harsh tones." Attorneys include an affidavit from a staff member with their firm, Ms. Cancienne, who stated that the trial judge's "aggressive tone made me feel quite uncomfortable and intimidated." The trial judge did not address these accusations in the order denying recusal.

"Judicial expressions of impatience, dissatisfaction, annoyance, and even anger toward counsel, the parties, or the case, will not ordinarily support a finding of bias or prejudice unless they indicate partiality on the merits of the case." *Cain-Swope v. Swope*, 523 S.W.3d 79, 89 (Tenn. Ct. App. 2016) (quoting *Alley*, 882 S.W.2d at 822). The transcript of the telephone conversation between the trial judge and Ms. Cancienne contains no comments by the trial judge concerning the merits of the case, and Attorneys do not

---

[10] A number of the assertions raised by Attorneys as sub-sections to this issue are addressed elsewhere in this Opinion, including (1) whether the second recusal motion was timely filed; (2) whether the trial judge showed "bias and prejudice" when he took action while the second recusal motion remained pending; (3) whether the trial judge "prejudiced" Attorneys when he "held an evidentiary hearing and appointed an interim conservator despite the pending Second Recusal Motion"; (3) whether the trial judge "prejudiced" Attorneys by failing to acknowledge prior orders entered in the previous emergency conservatorship action; and (4) whether the trial judge "prejudiced" Attorneys when he "instructed" Attorney Wade "on what evidence was needed and solicited testimony" from opposing counsel's witnesses to "further his biased agenda." We have addressed each of these arguments in other portions of this Opinion and decline to revisit them here.

claim on appeal that the trial judge made any reference to the merits of the case during the telephone exchanges. Instead, Attorneys center their claims upon the trial judge's apparent irritation and resultant aggressive "tone" directed toward Ms. Cancienne in not being able to reach Ms. Bleavins by telephone. The trial judge's display of irritation does not warrant recusal. *See id.*

## XII. Interactions With Opposing Counsel

Attorneys assert that the trial judge "prejudiced" Attorneys when he "colluded with" and "solicited testimony" from Attorney Wade during the December 14, 2023 evidentiary hearing. In support, Attorneys urge that the transcript from the hearing is "replete with leading questions" by the trial judge to Mr. Wade such that the transcript reads "as though [the trial judge] was the attorney, [Mr. Wade] the witness, and the Rules of Evidence did not exist." According to Attorneys, these exchanges between the trial judge and Mr. Wade illustrate that "due to his bias against [Attorneys, the trial judge] never intended to listen to the arguments of [Attorneys]."

Upon review of the complete transcript included in the record, we do not find evidence of bias or prejudice against Attorneys in the trial judge's exchanges with Mr. Wade. On the contrary, the trial judge repeatedly referred to Attorneys as "excellent attorneys" as he addressed Mr. Wade and others present during the December 14, 2023 hearing. Significantly, although the trial court did ask several questions of Mr. Wade during the hearing to clarify the procedural posture of the case and Mr. Wade's understanding of who maintained authority to care for Ms. Malone, the trial court ultimately relied on the testimony of Mr. William Bomar, previous counsel for Ms. Malone, and Ms. Jackson concerning the present status of Ms. Malone and whether immediate court intervention was necessary. Upon the conclusion of the hearing, the trial court stated:

> The Court believes that there is sufficient evidence in the record at this time in between the testimony and – of Mr. Bomar and the collective exhibit concerning the revocation of the powers of attorney and the appointment of the new power of attorney and then the testimony of Ms. Jackson concerning her frustration over the conflict with Mr. Autry that she has concerning who has legal authority, whether it is her or it is Mr. Autry or Ms. Bleavins, to act, to care for [Ms. Malone].

> The Court notes also that this is December the 14th and that basically tomorrow is the last scheduled day that the Court has hearings, and that the Court is planning on being closed for two weeks for the holidays. So the Court believes that good cause has been shown that the Court will need to take action to clarify who has legal authority to care for [Ms. Malone].

The trial court did not indicate that it relied on testimony from Mr. Wade in rendering its decision. Attorneys assert that the trial judge relied on the "unsubstantiated and hearsay statements" of Mr. Bomar and Ms. Jackson, "two individuals who also hold great contempt for [Attorneys], in order to further his agenda of punishing [Attorneys] by precluding them from serving as fiduciaries and counsel for Ms. Malone." Attorneys proffer no evidence of any improper agenda on the part of the trial judge as it relates to the testimony of Mr. Bomar and Ms. Jackson. Moreover, the trial court's reliance on their testimony, even if error, does not support a finding of bias or prejudice. *See Adams*, 674 S.W.3d at 879.

Attorneys posit that the trial judge exhibited bias toward Attorneys by "colluding" with Attorney Wade to "ambush" Mr. Autry in an attempt to "force his appearance" at the December 14, 2023 hearing. In the order denying recusal, the trial court addressed the court's efforts to ensure that Attorneys would attend the hearings that had been set on December 13 and 14 as follows:

> On December 11, 2023, this Court entered *ORDER SETTING HEARING,* ordering that "an evidentiary hearing will be held on December 13, 2023, at 9:30 a.m. on the issues set forth in the pleadings in this case." [Attorneys] did not appear at that hearing. The Court instructed counsel David Wade ("Wade") to telephone [Attorneys] to tell them the Court was waiting for them to appear. Wade reported that he did not reach Bleavins but had been informed that she was in her office and would not take his call. Wade further reported that he had been advised that Autry had traveled to Little Rock, Arkansas for a deposition. In open court, on a speaker phone, the judge with all the parties and the court reporter present attempted to reach Bleavins by phone. The receptionist who answered the call informed the judge that Bleavins would not take the call. The Court asked that Bleavins return the call. The Court and counsel waited until 11:00 a.m., but Bleavins did not return the call. Shortly after 11:00 a.m. the Court entered *ORDER SETTING HEARING ON PETITIONERS' MOTION FOR RECUSAL OF PROBATE JUDGE* ordering an evidentiary hearing to begin at 4:30 p.m. that afternoon. The Court ensured that [Attorneys] were immediately notified of that order. The Court takes judicial notice of the fact that Little Rock Arkansas is a two hour drive from Memphis, so the Court was comfortable that Autry had time to recess a deposition and appear in court. Bleavins never returned the Court's telephone call. Neither Autry nor Bleavins appeared at the 4:30 hearing. The Court was advised that Autry had, in fact, not traveled to Little Rock, but had attended a deposition that afternoon remotely via Zoom.

> Because the docket of Division 1 of the Shelby County Probate Court showed a hearing requiring the appearance of Autry and other counsel in this

- 35 -

case for a hearing on December 14, 2023, from 9:20 a.m. to 11:20 a.m., the Court continued the hearing until 11:30 a.m. on December 14, 2023. The Court ensured that [Attorneys] were immediately notified of the date and time of the continuance. Late in the afternoon on December 13, 2023, Autry contacted Division I of the Shelby County Probate Court and requested that the Court allow him to appear at the Division I hearing the next morning by Zoom. Counsel reported to the Court that when Wade asked Autry during the Division I hearing if he would be attending the 11:30 hearing in Division II, Autry said he would not comment on any case but the one he was appearing on in Division I via Zoom. During that Zoom hearing Autry temporarily left to be served by a process server. When he returned he made a comment that he thought he was "about to be arrested" or words to that effect. Neither Autry nor Bleavins appeared at the 11:30 hearing on December 14, 202[3]. The Court stated that [Attorneys] are excellent attorneys and that the Court does not know why they did not appear at the evidentiary hearing.

(Paragraph numbering omitted.) Attorneys admit in their appellate brief that Mr. Autry intentionally avoided appearing in-person in another courtroom on December 14, 2023, because he feared retribution from the trial judge in the instant case:

> [The trial judge], with the assistance of attorney David Wade, attempted to ambush Petitioner Autry by setting the December 14, 2023 hearing at 11:30 a.m., immediately following Petitioner Autry's already scheduled hearing in another courtroom set to conclude at 11:20 a.m. Petitioner Autry believed that [the trial judge's] intention was to cause his courtroom deputy to physically escort Petitioner Autry to [the trial judge's] courtroom and force him to appear and answer [the trial judge's] questions. Ever mindful of the hostility of the events and exchanges which took place during the "status conference" on November 6, 2023, and the tone in which [the trial judge] spoke to the law firm receptionist, Petitioner Autry took precautions to avoid this scenario and requested that he appear in his prior hearing via zoom, which he did.

(Record citation omitted.) After Mr. Wade informed the trial judge during the December 14, 2023 hearing that Mr. Autry had feared being "arrested" if he appeared in person, the trial judge stated: "Now I don't know why Mr. Autry would think that a process server would come or anybody would come to arrest him. He's an excellent attorney, and the Court has no desire to arrest him or . . . Ms. Bleavins."

Upon review, the trial judge's interactions with Mr. Wade regarding Mr. Autry's attendance at the December 14 hearing do not warrant recusal. Indeed, we find it reasonable that the trial court would desire Attorneys' presence in court to argue their

- 36 -

second recusal motion or to appear for any evidentiary hearing. Regarding Attorneys' contentions that the trial judge improperly "solicited testimony" from Mr. Wade and Ms. Jackson during the December 14, 2023 hearing, we note that the time to object to such solicitation was during the hearing itself, an opportunity Attorneys waived by refusing to attend and by intentionally avoiding interactions with the trial court. Accordingly, we find nothing in the trial judge's attempts to set the hearing for a time Attorneys could attend or in the trial judge's interactions with Mr. Wade that rises to the level of "collusion" or "force."

## XIII. The *Dupree* Case

Attorneys argue that the trial judge exhibited bias against them when he entered an order substituting the personal representative by default in an unrelated case, *The Estate of Korey DeJuan Dupree* ("the *Dupree* Case"). In the order denying recusal, the trial judge addressed this issue as follows:

> [Attorneys] complain that this Court showed bias against them when it entered a default judgment on a petition seeking to remove [Ms.] Bleavins as Personal Representative and [Mr.] Autry as attorney for an estate, when the decedent's heirs sought removal based on failure to communicate. The Dupree heirs filed their petition in December 2022. [Attorneys] filed no answer.

> Tennessee law gives trial courts "broad discretionary authority to control their dockets and the proceedings in their courts." *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003). When this Court agreed to continue the March 20, 2023 hearing at Autry's request, the Court instructed counsel to set the matter for hearing by agreement. When no hearing had been held by November 2023 but the heirs were continuing to ask for hearing dates, the Court was concerned that its instruction to set the matter by agreement had not been followed.

> The Court set two hearings in November 2023. At the second setting in November, the Court granted the petition by default. [Attorneys] have filed a Motion to Vacate, which this Court will hear when [Attorneys] bring it before the Court.

> Both Bleavins and Autry are experienced attorneys and, as this Court has observed in open court in this cause, are both excellent attorneys. As the Court of Appeals stated in *Bowers v. Ditto*, [No. E2022-01307-COA-R3-CV,] 2023 WL 4401135 [at *7] (Tenn. Ct. App. [July 7,] 2023), persons with such litigation experience "should know the consequences" of failing to

- Respond in any way to a Petition and an Amended Petition,
- not set a matter by agreement when instructed to do so,
- file a motion for continuance if their appearance on a given date was impossible or inconvenient, and/or
- appear at hearings.

*Id*. at *7. A default judgment was within the scope of this Court's authority to manage its docket. Although the ruling is adverse to [Attorneys], adverse rulings are no basis for recusal. *Adams v. Dunavant*, 674 S.W.3d 871, 880 (Tenn. 2023). Objectively viewed, given the facts known to this Court, the entry of a default judgment is supported by the record. This issue is no basis for recusal.

(Footnote omitted).

Upon review, we agree that a trial court maintains "broad discretionary authority" to control its own docket, and we decline to disturb that authority here. *See Hessmer*, 138 S.W.3d at 901; *Justice*, 918 S.W.2d at 429-30. Moreover, we agree with the trial court that the default ruling against Attorneys does not, standing alone, warrant recusal. *See Adams*, 674 S.W.3d at 880. Finally, Attorneys proffer only a few emails between attorneys and their own speculation as to the trial court's motives in rendering its decision in the *Dupree* Case. Without more, we find no basis for recusal. *See Runyon*, 2014 WL 1285729, at *9.

## XIV. Conclusion

For the foregoing reasons, we affirm the trial judge's denial of Attorneys' second motion for recusal. The additional issue raised by Ms. Jackson and Mr. Royal is beyond the scope of this Rule 10B appeal; therefore, we do not reach the issue in this Opinion. *See Adkins*, 2021 WL 2882491, at *17 ("Under [Rule 10B], we may not review the correctness or merits of the trial court's other rulings[.]") (internal quotation marks and citations omitted). The stay of this case is hereby lifted, and this case is remanded to the trial court for further proceedings. The costs of this appeal are taxed to the Appellants, Edward Thomas Autry and Hannah Elizabeth Bleavins.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE